﻿Citation Nr: 18124194
Decision Date: 08/07/18 Archive Date: 08/06/18

DOCKET NO. 11-23 852
DATE: August 7, 2018
ORDER
1. Entitlement to a disability rating in excess of 30 percent for bronchial asthma prior to October 21, 2015, is denied. 
2. Entitlement to a disability rating in excess of 60 percent for bronchial asthma from October 21, 2015, and thereafter is denied.
3. Entitlement to a total disability rating based on individual unemployability due to a service-connected disability (TDIU) is denied.
FINDINGS OF FACT
1. Prior to October 21, 2015, the evidence does not show that bronchial asthma manifested with an FEV-1 of 40-to 55-percent predicted, FEV-1/FVC of 40 to 55 percent or, at least monthly visits to a physician for required care of exacerbations or intermittent (at least three per year) courses of systemic (oral or parenteral) corticosteroids or that it caused an exceptional or unusual disability picture. 
2. From October 21, 2015, the evidence does not show that bronchial asthma manifested with an FEV-1 of less than 40 percent predicted, or FEV-1/FVC of less than 40 percent, or more than one attack per week with episodes of respiratory failure, or; required daily use of systemic (oral or parenteral) high dose corticosteroids or immuno-suppressive medications or that it caused an exceptional or unusual disability picture. 
3. The Veteran is not precluded from securing or following a substantially gainful occupation due to bronchial asthma.
CONCLUSIONS OF LAW
1. The criteria for a disability rating in excess of 30 percent for bronchial asthma prior to October 21, 2015, have not been met. 38 U.S.C. §§ 1155, 5107(b); 38 C.F.R. §§ 3.102, 3.321, 4.1-4.3, 4.7, 4.97, Diagnostic Code 6602.
2. The criteria for a disability rating in excess of 60 percent for bronchial asthma from October 21, 2015, have not been met. 38 U.S.C. §§ 1155, 5107(b); 38 C.F.R. §§ 3.102, 3.321, 4.1-4.3, 4.7, 4.97, Diagnostic Code 6602. 
3. The criteria for referral for a TDIU rating prior to October 21, 2015 or a TDIU rating as of October 21, 2015, have not been met. 38 U.S.C. §§ 1155, 5107(b); 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.3, 4.16.
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The Veteran had active duty from March 1971 to September 1972. 
In September 2014, the Board denied the claim for an increased disability evaluation for his asthma. The Veteran appealed the Board’s decision to the United States Court of Appeals for Veterans Claims (Court). In May 2015, the Court issued a Joint Motion for Remand (JMR) partially vacating and remanding the Board’s September 2014 decision. The JMR focused on the Board’s previous finding as to whether the Veteran’s symptomatology related to his asthma warranted referral for extraschedular consideration, but vacated the determinations the Board made regarding schedular and extraschedular ratings. 
In August 2015, the Board remanded the claim for an increased disability rating for asthma and for entitlement to a TDIU rating. In April 2016, the VA Regional Office (RO) increased the Veteran’s disability rating to 60 percent rating for bronchial asthma, effective October 21, 2015, and denied an evaluation in excess of 30 percent prior to that date. The RO also denied entitlement to a TDIU rating. 
In March 2017, the Board remanded the claims again for additional development and referred the matter to determine whether extraschedular consideration was warranted for the Veteran’s bronchial asthma. A more in-depth discussion of the procedural history concerning extraschedular consideration is within the extraschedular analysis set forth below. 
The matter has returned to the Board for a decision. The Board finds that the matter has been fully developed and adjudication is appropriate. 
Increased Disability Rating for Bronchial Asthma
Disability ratings are determined by evaluating the extent to which a service-connected disability adversely affects the ability to function under the ordinary conditions of daily life, including employment, by comparing symptomatology with the criteria set forth in the Schedule for Rating Disabilities. See 38 U.S.C. § 1155, 38 C.F.R. § 4.1. 
A disability rating may require re-evaluation in accordance with changes in condition. Where a veteran is appealing the rating for an already established service-connected condition, the veteran’s present level of disability is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). 
Staged ratings are appropriate when the evidence establishes that the claimed disability manifested symptoms that would warrant different ratings for distinct time periods. See 38 C.F.R. § 4.71a. In this case, the Veteran has a staged rating. He has a 30 percent disability rating prior to October 21, 2015 and a 60 percent disability rating as of October 21, 2015. The Board’s analysis reviews closely both ratings and whether the evidence of record supports an increase for either disability rating for the Veteran’s asthma. 
When all the evidence is assembled, the Board is then responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether the preponderance of the evidence is against the claim, in which case, the claim is denied. 38 U.S.C. § 5107; 38 C.F.R. § 3.102. 
The Veteran is service connected for bronchial asthma. Under the current Diagnostic Code 6602, pertaining to bronchial asthma, a 30 percent rating is assigned for FEV-1 of 56- to 70- percent predicted, or FEV-1/FVC of 56 to 70 percent or daily inhalational or oral bronchodilator therapy or inhalational anti-inflammatory medication. A 60 percent rating is assigned for an FEV-1 of 40-to 55- percent predicted, or FEV-1/FVC of 40 to 55 percent, or at least monthly visits to a physician for required care of exacerbations, or intermittent (at least 3 times per year) course of systemic (oral or parenteral) corticosteroids. A maximum 100 percent rating is assigned for bronchial asthma with an FEV-1 of less than 40-percent predicted, or FEV-1/FVC less than 40 percent, or more than 1 attack per week with episodes of respiratory failure, or requires daily use of systemic (oral or parenteral) high dose corticosteroids or immunosuppressive medications. 38 C.F.R. § 4.97, Diagnostic Code 6602. 
Generally, pulmonary function tests results are reported before and after the administration of bronchodilator therapy. VA regulations instruct that post-bronchodilator results be used when considering pulmonary function tests criteria for ratings under Diagnostic Codes 6600, 6603, 6604, 6825-6833, and 6840-6845. See 38 C.F.R. § 4.96(d)(4). There are no regulations identifying whether pre- or post-bronchodilator results should be used when determining disability ratings under Diagnostic Code 6602. As 38 C.F.R. § 4.96(d)(4) does not explicitly apply to Diagnostic Code 6602, the Board will use the pulmonary function tests results that allow the most favorable disability rating to the Veteran.
Analysis for increased ratings for the Veteran’s bronchial asthma.
The Board will first address whether the evidence of record supports a schedular rating in excess of 30 percent prior to October 21, 2015, and then address whether an increase in the Veteran’s disability rating is warranted from October 21, 2015 and thereafter in excess of 60 percent for his bronchial asthma. Also, the Board will provide an analysis as to whether an extraschedular rating for the Veteran’s bronchial asthma is warranted throughout the appeal.
1. Claim for an increase in the 30 percent disability rating for bronchial asthma prior to October 20, 2015
After a careful review of the evidence of the record, the Board finds that the preponderance of the evidence is against the Veteran’s claim for a disability rating in excess of 30 percent prior to October 21, 2015. 
The Veteran filed a claim for an increase in the disability rating for his service-connected bronchial asthma in September 2008. 
Relevant evidence of record consists of VA examinations conducted in March 2009 and April 2011, as well as records of ongoing treatment the Veteran has received from VA. Post-service medical evidence reflects that the Veteran has been treated for breathing problems and diagnosed with bronchial asthma on multiple occasions. In that regard, a March 2004 VA treatment record shows that the Veteran was prescribed a bronchodilator as medication for daily use to treat his bronchial asthma. The Veteran was seen by a VA treatment provider in February 2008 for complaints of cough and congestion. In April 2008, the Veteran was seen for a follow-up visit and denied wheezing and dyspnea on exertion. In May 2009, when the Veteran was seen for an initial colonoscopy, he denied dizziness, shortness of breath, or chest discomfort at rest or with activity. Further treatment records acknowledge an ongoing diagnosis of bronchial asthma with daily inhalational treatment, but VA treatment records are negative for prescriptions of corticosteroids to treat the Veteran’s bronchial asthma. 
The March 2009 VA examiner noted that the Veteran reported often feeling dizzy when he took his medications to address his shortness of breath. The Veteran denied use of oral or parenteral corticosteroids as well as antibiotics or other immune-suppressive medications. The Veteran reported using his inhalers daily and that he experienced asthma attacks daily with several clinical visits for exacerbations per year. The Veteran also reported that he experienced wheezing with a persistent cough and occasional dyspnea. Pulmonary function testing conducted in concert with the examination, showed FEV-1 of 68 percent predicted and FEV-1/FVC of 82 percent. Spirometry testing demonstrated mild obstruction and the examiner diagnosed the Veteran with bronchial asthma that was stable on the current treatment. The examiner noted that the Veteran reported having increased absenteeism from his work due to shortness of breath and dizziness related to his bronchial asthma. 
The April 2011 VA examiner noted that the Veteran complained of loss of appetite, fluctuating weight, hemoptysis, daily cough with purulent sputum, headaches, shortness of breath, daily asthma attacks, and the need to visit a physician as often as once a month to control his asthma attacks. The Veteran stated that he “contract[ed] infection easily from his respiratory condition,” requiring antibiotics multiple times over the course of the year. The examiner reported that pulmonary functioning testing did not provide valid results because the Veteran demonstrated “poor effort and performance” and “did not perform to match his entirely normal chest physical exam.”
The Board finds that, prior to October 21, 2015, a disability rating higher than 30 percent is not warranted for the Veteran’s bronchial asthma. In this regard, the Veteran used inhalers to treat his asthma on a daily basis but had not been prescribed systemic corticosteroids on at least three occasions in any given 12-month period. The Board also notes that although the Veteran claimed at his April 2011 VA examination that he saw a physician at least once a month to treat his bronchial asthma, the preponderance of the evidence is against a finding that the Veteran’s saw physicians on a monthly basis for his bronchial asthma. The Board’s review of evidence does not reflect three visits during any 12-month period for the use of systemic corticosteroids at any time during this period on appeal. Although, the Veteran’s pulmonary function testing performed at the April 2011 VA examination returned with significantly lower FEV-1 and FEV-1/FVC scores than those noted in the March 2009 VA examination, the April 2011 examiner noted that the Veteran’s results were unreliable because of the Veteran’s “poor effort and performance.” Therefore, prior to October 21, 2015, the only valid pulmonary function test results were those noted in the March 2009 VA examination which found the Veteran’s FEV-1 score to be 68 percent predicted and his FEV-1/FVC score to be 82 percent, neither of which warrant a higher disability rating of 60 percent under Diagnostic Code 6602. 
The Board has also considered, but does not find, that the Veteran’s bronchial asthma has warranted a rating of 100 percent under Diagnostic Code 6602 for any period on appeal. As discussed above, the only valid pulmonary function test results are from the March 2009 VA examination and those results do not establish an FEV-1 or FEV-1/FVC below 40 percent. Also, the evidence of record does not show that the Veteran experienced more than one asthma attack per week with episodes of respiratory failure and the Veteran reported that he has not used corticosteroids or immuno-suppressive medications to treat his bronchial asthma. 
The Board has considered carefully the Veteran’s assertions and those he submitted from his family, employees and friends. The Board finds that the Veteran and the lay witnesses are competent to report what they have observed. See Kahana v. Shinseki, 24 Vet. App. 428, 438 (2011); Jandreau v. Nicholson, 492 F.3d 1372-1377 (Fed. Cir. 2007); and Jones v. Brown, 7 Vet. App. 134, 137-38 (1994). However, the Board finds that the lay statements by the Veteran’s family, friends and employees are reiterations of the Veteran’s assertions, and the shortness of breath described is contemplated by the 30 percent criteria. Regardless, even if the Board accepts what the family, employees, and friends write about the Veteran’s disability picture pertaining to bronchial asthma, it does not change the finding that an evaluation in excess of 30 percent for this part of the appeal is not warranted, as their statements do not establish that the Veteran meets the criteria for a 60 percent rating. The Board finds that the March 2009 and April 2011 VA examiners’ clinical findings and the clinical findings in the treatment records are more probative and persuasive than the lay evidence submitted by the Veteran. The Board gives more weight to the objective findings in the VA examinations including the diagnostic testing performed and the results therein which are highly probative in this claim. 
In May 2018, the Veteran’s representative submitted an informal hearing presentation (IHP) and asserted that the “preponderance of the evidence is in his favor, or at the very least, is in equipoise.” However, the Board, as the finder of fact, finds that the preponderance of the evidence of record is against the Veteran’s claim for an increased rating in excess of 30 percent for bronchial asthma prior to October 21, 2015, for the reasons stated above. 
In sum, the Board finds that the preponderance of the evidence is against a claim for a disability rating in excess of 30 percent prior to October 21, 2015 for his service-connected bronchial asthma. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C. § 5107(b); 38 C.F.R. § 4.3.
2. Claim for an increase in the 60 percent disability rating for bronchial asthma from October 21, 2015 
After a careful review of the evidence of record, the Board finds that the preponderance of the evidence is against the claim for a disability rating in excess of 60 percent for the Veteran’s bronchial asthma as of October 21, 2015. 
The November 2015 VA examiner reported that the Veteran’s bronchial asthma does not require use of corticosteroid medication or antibiotics. The Veteran denied respiratory failure within the past 12-months. The Veteran reported daily use of bronchodilator therapy and anti-inflammatory medication. The examiner reported that the Veteran had not been treated by a physician for required care of exacerbations of his bronchial asthma. The examiner reported that an October 21, 2015 pulmonary function test showed that the Veteran had an FEV-1 of 40 to 55 percent with a predicted value of 41 percent. The Veteran reported symptoms of shortness of breath, chest tightness, and coughing when attempting to climb a ladder or when carrying tools and that his symptoms occurred without triggers and unexpectedly. The examiner noted that the Veteran reported that he had not had recent hospitalization for bronchial asthma. Regarding functional impact, the examiner noted that the Veteran’s bronchial asthma, with dizziness, dyspnea on exertion, and coughing spells, excluded his participation in physical/heavy labor, including lifting greater than 10 pounds; however, the examiner stated that these symptoms did not interfere with the Veteran’s ability to perform sedentary employment. The examiner noted that the Veteran reported changing from employment as a full-time roofer to a part-time roofer.
The October 21, 2015 pulmonary function test showed that the Veteran’s FEV-1 was 41 percent predicted, which falls squarely within the 60 percent rating criteria. Also, the November 2015 VA examiner specifically noted that the Veteran’s bronchial asthma does not require the use of corticosteroids, antibiotics, outpatient oxygen therapy or oral bronchodilators. The Veteran has not had any episodes of respiratory failure in the past 12-months or seen a physician for exacerbations of his bronchial asthma. 
The Board has reviewed the Veteran’s VA treatment records. While these records show a consistent diagnosis for bronchial asthma, they are negative for treatment or symptoms warranting a disability rating in excess of 60 percent bronchial asthma for this part of the appeal. For example, the Veteran reported to the November 2015 examiner that he took prednisone, a steroid, two years prior to the VA examination. However, a review of the record shows that the Veteran was prescribed prednisone for “allergic rhinitis” in February 2012 and for thyroid treatment from March to April in 2016. VA treatment records show use of a corticosteroid in conjunction with an epidural, but the record does not support the use of a corticosteroid as treatment for the Veteran’s bronchial asthma. In the November 2015 VA examination report, the examiner was asked if the Veteran had had any asthma attacks with episodes of respiratory failure, and the answer was no. The examiner also replied no to the question of whether the Veteran’s respiratory condition requires the use of antibiotics. Therefore, the preponderance of the evidence is against a finding that bronchial asthma warrants an evaluation in excess of 60 percent from October 21, 2015. The Board finds that the October 21, 2015 pulmonary function test approximates precisely a 60 percent disability rating under Diagnostic Code 6602, but no higher.
As stated above, the Veteran submitted statements regarding the severity of his symptoms related to his bronchial asthma. He also submitted several statements from family, employees and friends regarding symptoms related to his bronchial asthma. These symptoms are contemplated by the 60 percent criteria. Additionally, the Board finds the November 2015 VA examiner’s findings and reports, which include the October 21, 2015 pulmonary function test, are more probative and persuasive as to whether an increase in the Veteran’s disability rating is warranted from October 21, 2015. 
The Veteran’s representative submitted an IHP asserting that the Veteran is warranted a disability rating in excess of a 60 percent as of October 21, 2015. However, as stated above, the Board, as the finder of fact, finds that the preponderance of the evidence of record is against the Veteran’s claim for an increased rating in excess of 60 percent for bronchial asthma, as of October 21, 2015 and thereafter based upon the pulmonary function test results as reported above. 
In sum, the Board finds that the preponderance of the evidence is against the claim for a disability rating in excess of 60 percent as of October 21, 2015 for service-connected bronchial asthma. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.
Extraschedular analysis
The Board will now address whether extraschedular consideration is warranted in this case given the Veteran’s symptomatology. 
In Thun v. Peake, the Court explained how the provisions of 38 C.F.R. § 3.321 are applied. Thun v. Peake, 22 Vet. App. 111, 115-16 (2008). Specifically, the Court stated that the determination of whether a veteran is entitled to an extraschedular rating under 38 C.F.R. § 3.321 is a three-step inquiry. First, the Board must first determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Second, if the schedular evaluation does not contemplate the claimant’s level of disability and symptomatology and is found inadequate, the Board must determine whether the claimant’s disability picture exhibits other related factors such as those provided by the regulation as “governing norms.” Third, if the rating schedule is inadequate to evaluate a Veteran’s disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the veteran’s disability picture requires the assignment of an extraschedular rating.
For reference, the rating criteria pertaining to bronchial asthma are found at 38 C.F.R. § 4.97, Diagnostic Code 6602. The Veteran is rated at 30 percent prior to October 21, 2015 and 60 percent from that date. 
As stated above, in September 2014, the Board denied the Veteran’s claim for an increase in the disability evaluation for bronchial asthma. The Veteran appealed the decision to the Court and in May 2015, the Court issued a JMR partially vacating and remanding the Board’s September 2014 decision. The JMR vacated and remanded the Board’s previous finding as to whether the Veteran’s claim warranted referral for extraschedular consideration. 
In August 2015, the Board remanded this claim to the RO for a VA examination, to develop the TDIU claim and for the RO/Appeals Management Center (AMC) to consider whether referral for extraschedular consideration was warranted. In March 2017, the Board remanded this clam for additional development and referred this claim to the Director of Compensation and Pension in order to consider whether the Veteran was entitled to an increased rating on an extraschedular basis.
The Board notes that the March 2009 VA examiner reported that Veteran’s bronchial asthma had significant effects on his occupation, as a roofer, due to shortness of breath and dizziness. The April 2011 examiner noted that the Veteran complained of loss of appetite, fluctuating weight, shortness of breath, hemoptysis, daily cough with purulent sputum, headaches and daily asthma attacks. The November 2015 examiner reported that the Veteran experienced dyspnea, which is shortness of breath. See https://medlineplus.gov/ency/article/003075.htm.
The Board finds that symptoms, such as shortness of breath, wheezing, and coughing, are contemplated in the schedular criteria under Diagnostic Code 6602 for bronchial asthma, as these are the common symptoms that are associated with a diagnosis of asthma. See https://medlineplus.gov/asthma.html. In other words, while these symptoms are not specifically listed under Diagnostic Code 6602, symptoms associated with a diagnosis would be contemplated by the rating schedule. 
However, the Board finds that the Veteran’s symptoms of dizziness, hemoptysis, loss of appetite, fluctuating weight and headaches are not contemplated by the schedular criteria under Diagnostic Code 6602. 
Having found that there are symptoms that are not contemplated by the criteria, the Board will consider whether the Veteran’s disability picture exhibits other related factors such as those provided by the regulation as “governing norms.” The Board finds that the evidence does not support a finding of marked interference with employment. Rather, the interference with employment due to the Veteran’s service-connected bronchial asthma is contemplated by the 30 percent and the 60 percent disability ratings given the severity of the respiratory disability under these ratings for the applicable time periods. For example, the 30 percent rating criteria contemplates the daily use of an inhaler or bronchodilator or the FEV-1 and FVC/FEV-1 requirements under the 30 percent rating criteria would cause one to take more than the customary number of breaks during a full-time work schedule. Prior to October 2015, the evidence shows that the Veteran was working, and was working full time without marked interference with employment. For example, in a February 2009 VA treatment record, the examiner wrote, “Denies fatigue—still works in construction, roofing.” In the March 2009 VA examination report, the examiner wrote that the Veteran was, “Currently, construction roofer full time x 30 years.” In an October 2009 VA treatment record, the examiner wrote that the Veteran was “still working in construction, roofing” and that the Veteran denied unusual fatigue. In a separate October 2009 VA treatment record, the Veteran reported difficulty working due to pain because he was unable to stand for more than five minutes. He was being seen at that appointment for his back pain at that time, and the Board finds it reasonable to conclude that the difficulties the Veteran was reporting associated with his work were due to his back pain, as he was describing increasing back pain that was radiating to his left leg. He was not discussing his asthma at this appointment. 
In a July 2011 VA treatment record, when asked if the Veteran had been exposed to civilian noise, the examiner wrote yes and that the Veteran had been doing “construction work for the past 30 years.” While such statement may not be clear in that the Veteran was still working, in a May 2012 VA treatment record, the examiner wrote that the Veteran reported, “I need to quit work; back pain.” Additionally, in an October 2011 VA treatment record, the examiner wrote, “Limited work related to back problems.” In an October 2013 VA treatment record, the examiner wrote that the Veteran was in “roofing” and, “He does heavy lifting and climbs roof.” An August 2014 VA treatment record shows that the examiner wrote, “[C]ontinues to work as a roofer.” In a separate September 2014 VA treatment record, the examiner wrote that the Veteran reported he would feel hot occasionally but in the setting of roofing in 100 degree heat.” In a March 2015 VA treatment record, the examiner wrote that the Veteran continued to work as a roofer. An April 2015 record shows that the examiner wrote, “He does heavy lifting and climbs roof.” 
At these visits, the Veteran was being treated for his back pain and not asthma. He often denied the usual symptoms associated with his asthma. For example, at the March 2009 VA examination, he denied a history of hemoptysis and reported occasional dyspnea and wheezing every night. When seen in May 2009, the examiner wrote that there was no wheezing or dyspnea on exertion. The Veteran’s chest was clear. In a separate May 2009 treatment record, the examiner wrote that the Veteran denied headache, dizziness, shortness of breath or chest discomfort at rest or with activity. Under assessment, it listed various systems, which includes, “Respiratory,” and of the symptoms listed, which included hemoptysis, O2 therapy, shortness of breath, cough, and “other,” the examiner checked shortness of breath only. When examined by the Social Security Administration in March 2010, the Veteran reported wheezing and shortness of breath, but then denied cough, productive or nonproductive sputum, blood, pain, smoker, dyspnea, and hemoptysis. His lungs were clear at that time. In November 2010 and February 2011, he denied wheezing and dyspnea on exertion, and his lungs were clear. In February 2013, the Veteran denied shortness of breath, cough, orthopnea, paroxysmal nocturnal dyspnea, but reported dyspnea on exertion. In April 2013 and March 2014, he denied wheezing and dyspnea on exertion. In September 2014, the Veteran denied cough, shortness of breath, or recent infections. In February 2015, the Veteran denied wheezing and dyspnea on exertion, and in March 2015, he denied chest pain and shortness of breath. In May 2015, he denied cough or increased sputum or hemoptysis. He denied chest pain, shortness of breath, paroxysmal nocturnal dyspnea, and orthopnea. 
In reviewing the records during this time period where the Veteran was in receipt of a 30 percent rating for bronchial asthma, when he was complaining about issues with working, it mostly related to his back. His statements do not cause the Board to finds that bronchial asthma was causing marked interference with the Veteran’s employment.
The Board is aware that at examinations, the Veteran’s symptoms are described as worse than they are in the VA treatment records both before and after the examination, and there are concerns that the Veteran was exaggerating his symptoms when being examined in connection with his asthma, as, again, his symptoms are described worse at these times than the ones documented in the regular treatment records. For example, when examined in March 2009, he reported wheezing every night and dyspnea at rest and when he was exerting himself. Two months later, he denied wheezing, dyspnea on exertion, shortness of breath, hemoptysis, cough, chest discomfort at rest or with activity. In June 2009, he denied wheezing and dyspnea on exertion. In March 2010, the Veteran reported episodic shortness of breath, wheezing, and lightheadedness. He denied cough, productive or nonproductive sputum, blood, dyspnea, and hemoptysis. In April 2010, he denied headaches, cough, shortness of breath, peripheral neuropathy, orthopnea. In May 2010, he reported occasional wheezing and dyspnea on exertion. In November 2010 and February 2011, he denied wheezing and dyspnea on exertion. 
However, at the April 2011 VA examination, he reported loss of appetite, hemoptysis, cough with purulent sputum, a daily cough with blood-tinged sputum, orthopnea, and shortness of breath, which he stated such symptoms occurred “all the time.” He described daily asthma and panic attacks and needing to visit a physician as often as one time per month. He reported taking antibiotics during the year, lasting two to six weeks and that when he had an infection, he required bed rest and treatment by a physician as often as one time per week, each time lasting six weeks. These allegations at the 2011 VA examination by the Veteran regarding his asthma symptoms are not supported by the clinical records. In May 2012, he denied wheezing and dyspnea on exertion. In February 2013, he reported dyspnea on exertion, but denied shortness of breath, cough, orthopnea, and paroxysmal nocturnal dyspnea. In April 2013 and March 2014, he denied wheezing and dyspnea on exertion, and his lungs were clear. In September 2014, he denied cough, shortness of breath, and infections. In February 2015, he denied wheezing, dyspnea on exertion, and his chest was clear. In May 2015, he denied headaches, cough, increase in sputum or hemoptysis, shortness of breath, paroxysmal nocturnal dyspnea, orthopnea, and his chest was clear. 
However, at the November 2015 VA examination, he reported severe cough, dizziness, lightheadedness, shortness of breath, chest tightness, two to three severe cough spells every day. One week later, and he denied wheezing and dyspnea on exertion. 
The Board has noticed a pattern in the Veteran’s report of symptoms, and thus, his reports of more severe symptoms at VA examinations are accorded lessened probative value. At the March 2010 examination in connection with the Veteran’s claim for Social Security Administration disability benefits, the Veteran told the examiner that he was currently unemployed and last worked in March 2010. In a May 2010 statement, the Veteran told VA that he was no longer able to “physically work.” As noted above, he was still working during this time as documented in VA treatment records. The Veteran told VA that he could not physically work in May 2010, but a VA examiner documented in October 2013 and April 2015 VA treatment records that the Veteran was in roofing and “[h] e does heavy lifting and climbs roof.” This is indicative of his doing physical work after he reported to VA that he was unable to do physical work. The Veteran subsequently told VA in this TDIU application that he was working part time from at least 2011 to 2015. He reported he stopped working full time in 2008, but a VA treatment record from March 2009 shows that the Veteran was working full time. The multiple inconsistencies in the record have damaged the Veteran’s overall credibility. 
In going through the record, the Board does not find that the evidence shows marked interference with employment while the Veteran was assigned a 30 percent rating. He was continuing to work and was not reporting difficulty working because of his asthma versus difficulty working because of his back pain. 
As to the time period where the Veteran is in receipt of a 60 percent rating, the Board finds that this rating contemplates significantly decreased respiratory functioning contemplated by the schedular criteria and the monthly physician visits. Again, such respiratory impairments would impact employment for reasons such as missing work for appointments and taking extra breaks to treat the disability, and the evidence during this part of the appeal does not show marked interference with employment. A July 2016 VA treatment record shows that the examiner wrote, “[C]ontinues to work as a roofer.” The credible records (i.e., VA treatment records) from this time period do not establish a finding that the Veteran’s bronchial asthma was causing marked interference with employment.
The Board notes that at no time has the Veteran had frequent hospitalizations due to his service-connected bronchial asthma. 
As stated above, the Board remanded this claim to the RO/AMC. In May 2017, the AMC found that the totality of the evidence did not support the contention that the Veteran’s service-connected bronchial asthma was so exceptional or unusual, as to render the use of the regular rating schedule standards impractical. Moreover, the AMC found that entitlement to an extraschedular evaluation was not warranted as there was no evidence of an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization. See 38 C.F.R. § 3.321(b)(1).
Additionally, in March 2018, the Director of Compensation and Pension found that the evidentiary record did not demonstrate that the symptomatology consistently associated with the Veteran’s service-connected bronchial asthma was not wholly contemplated by the criteria used to assign the past and current disability evaluations. 
Upon its de novo review, for the reasons described in detail above, the Board finds that when viewed in its entirety, the evidence does not support the contention that bronchial asthma is so exceptional or unusual, as to render the use of the regular rating schedule standards impractical. 
Therefore, entitlement to an extraschedular evaluation throughout the appeal period is denied because the preponderance of the evidence is against a finding that the Veteran has an exceptional or unusual disability picture that is not already contemplated by the 30 percent and 60 percent rating criteria. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102, 3.321.
3. TDIU Rating
VA will grant a total rating for compensation purposes based on unemployability when the evidence shows a veteran is precluded from obtaining or maintaining any gainful employment consistent with his education and occupational experience, by reason of his service-connected disabilities. 38 C.F.R. §§ 3.340, 3.341, 4.16. In reaching such a determination, the central inquiry is “whether the Veteran’s service-connected disabilities alone are of sufficient severity to produce unemployability.” Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). In arriving at a conclusion, consideration may be given to the veteran’s level of education, special training, and previous work experience, but not to his age or the impairment caused by nonservice-connected disabilities. See 38 C.F.R. §§ 3.341, 4.16, 4.19.
If there is only one service-connected disability, it must be rated at least 60 percent disabling to qualify for TDIU benefits; if there are two or more such disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a). When a veteran fails to meet the applicable percentage standards enunciated in 38 C.F.R. § 4.16(a), an extraschedular TDIU rating may be warranted where the veteran is unemployable due to a service-connected disability or disabilities. 38 C.F.R. § 4.16(b). 
In October 2015, the Veteran submitted a completed VA Form 21-8940, Veteran’s Application for Increased Compensation Based on Unemployability. He wrote he became too disabled to work from asthma in 2008. He indicated that he made the most money in 1998, when he made approximately $54,000 (or $59,000, the second number is difficult to read). He reported he was still working for his business (he owns a roofing company) from 2011 to the present, where he was making, on average, $900/month or more. The Veteran reported he completed high school and two years of technical school. (In his Social Security Administration application, he wrote he had completed two years of college.) The Veteran reported he was the President of his own business. 
The Veteran asserts that he became too disabled to work in 2008. Tax returns for the Veteran’s business, for which he was listed as the President of his company, show earned income of $33,589 in 2010, $49,270 in 2011, $71,835 in 2012, $33,525 in 2013, and $65,152 in 2014. Individual tax returns show earnings of $5,547 in 2010, $4,968 in 2011, $9,380 in 2012, $8,730 in 2013, and $8,055 in 2014. The Board notes that the Veteran’s business tax returns show that his company was successful, while the individual tax returns show marginal income. The Board finds that the Veteran’s business tax returns show that he was capable of engaging in more than part-time employment as he asserted. The Veteran was earning more than he asserted on his TDIU application when he listed that his highest gross earnings per month between 2011 and 2015 averaged $952.00. The Board finds the Veteran’s discrepancies in the reporting of his earned income further support the Board’s conclusions that the Veteran’s statements to VA made in connection with seeking monetary benefits lack credibility and trustworthiness. Therefore, the Veteran’s assertions that he is unable to engage in substantial gainful employment are not credible.
In March 2009, the Veteran reported to the VA examiner that he worked as a roofer. The March 2009 VA examiner noted that the Veteran reported that his bronchial asthma increased his absenteeism from work, and that shortness of breath and dizziness prevented the him from working. In April 2011, a VA examiner reported that the Veteran asserted that he was “unable to work and on social security, need help often.” However, in 2011 his business earned $49,270 and the following year it earned $71,835. In November 2015, a VA examiner reported that the Veteran’s bronchial asthma with dizziness, dyspnea on exertion, and coughing spells excluded him from employment in physical and heavy labor, but they did not exclude the Veteran from performing sedentary employment.
The Board finds that as a business owner the Veteran has a skill set to review contracts, review building codes and follow guidelines. Employee P.B. already noted that the Veteran performs these tasks in her April 2016 statement. He also has the ability to speak with building inspectors while seated in-person or over the phone. Therefore, the Board finds that the Veteran’s work history as a business owner has provided him with skills to perform sedentary work. 
The Board has laid out above in its extraschedular discussion the fact that the Veteran continued to work while telling a March 2010 examiner who was performing an examination in connection with the Veteran’s claim for Social Security disability benefits, that he was unemployed and had stopped working. The VA treatment records document that the Veteran was working through 2016. See July 2016 VA treatment record (showing examiner wrote, “[C]ontinues to work as a roofer.”). A March 2017 VA treatment record shows that the Veteran reported he was mostly retired. When he was reporting difficulty with working to VA examiners, it revolved around his back pain. For example, in October 2009, while being seen for his back pain, he reported he had difficulty working due to pain and not being able to stand for more than five minutes. In October 2010, a VA examiner wrote, “States now on social security disability related to back. Still able to do very limited supervision of construction.” In October 2011, a VA examiner wrote, “Limited work related to back problems.” In May 2012, the examiner quoted the Veteran as saying, “I need to quit work, back pain.” 
The overall impression in reviewing the record was that the Veteran’s asthma impacts the Veteran’s employment, but it does not preclude employment. 
The Veteran’s representative asserted in a May 2018 IHP, that the Veteran warrants TDIU. The Veteran’s representative stated that the Veteran has marked interference with employment. However, the Board finds that while the Veteran’s bronchial asthma disability may interfere with employment in he is not precluded from all types of employment, specifically the Veteran is not precluded from sedentary employment. The Board addressed above why it finds that the preponderance of the evidence is against a finding of marked interference with employment.
Moreover, Social Security Administration records show that the Veteran’s primary diagnosis is a back condition and his secondary diagnosis is his service-connected bronchial asthma. However, the Veteran is not service connected for his back therefore any contentions related to his back condition that may limit his employment do not apply in this TDIU analysis. 
The principle question before the Board, for TDIU rating purposes, is whether the Veteran is capable of performing the physical and mental acts required by employment, not whether the Veteran can find employment. See Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993). Clearly, given the earnings of the Veteran’s business from 2011 through 2014 he has worked and was more than capable of engaging in and maintaining substantial gainful employment. However, giving the Veteran the benefit of the doubt even if the Veteran is engaging in work at the sedentary level only, the Board finds that the Veteran is capable of performing the physical and mental acts required by employment. Therefore, the Board concludes that the Veteran is capable of engaging in gainful sedentary work, and the claim for a TDIU rating is denied.
 
A. P. SIMPSON
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD E. Morgan, Associate Counsel